Filed 6/30/26  P. v. Campbell CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D087343 |
| Plaintiff and Respondent, | (Super. Ct. No. FSB18003086) |
| v. | |
| BRANDEN ANDRE CAMPBELL, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Bernardino County, Cheryl C. Kersey, Judge.  Affirmed as modified.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Eric A. Swenson and Monique Myers, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Branden Andre Campbell appeals from his judgment of conviction and sentence for first degree murder and attempted premeditated murder. He contends the prosecutor committed prosecutorial error by misstating the law during closing argument. He asserts the trial court abused its discretion by not dismissing his prior strike, serious felony priors, and certain firearm enhancements. We conclude he has forfeited these claims by failing to object to the asserted prosecutorial error and by failing to request dismissal of the various sentencing enhancements. We reject his alternative ineffective assistance of counsel claim with respect to his counsel's failure to object to the prosecutor's closing argument and to not request dismissal of his prior strike. We agree with the parties that the court imposed an unauthorized sentence by staying the serious felony prior enhancement as to one of the counts and the lesser firearm enhancements as to both counts. We shall modify the judgment by striking these enhancements and affirm the judgment in all other respects.

## BACKGROUND

### I.

### *Evidence at Trial*

Campbell and Albert Beckley were long-time friends and members of the same criminal street gang. One evening in August 2018, Campbell, Beckley, and G.J. (Beckley's girlfriend) met up to go to a club. Before driving there, Campbell and Beckley had a disagreement over who was "putting in [more] work" for their gang, and why Campbell would not give Beckley a gun. Beckley was upset with Campbell, but everyone was drinking and still having a good time.

2

The three eventually got to the club, where they drank and danced for several hours. When the club closed, they left together. Because police were present and Campbell had brought his gun into the club, G.J. took the gun and put it in the car. She then got in the driver's seat, while Beckley sat in the passenger seat and Campbell in the back.

As G.J. drove to Campbell's apartment, Campbell was "being a bully" bringing up their prior disagreement about "gang altercations." Beckley again asked Campbell why he would not give him a gun when it was Campbell who was "talking smack over the internet" and he was "the one getting called out for it." At this time, Campbell was "doing drugs heavily," and Beckley was drunk and "in and out of consciousness." Campbell challenged Beckley to get out of the car so they could "fight like men."

When the three arrived at Campbell's apartment, Campbell continued to badger Beckley to fight him. Beckley got out of the car. He and Campbell then fought for "three or four rounds." The fight was a draw and G.J. helped Beckley back into the car's passenger side. As Campbell started walking toward his apartment, G.J. got his gun from the car and gave it to him.

Suddenly, Beckley got out of the car and called Campbell "a bitch." Campbell turned and walked back toward Beckley, responding, "Oh, you think I'm a bitch?" Campbell then shot Beckley, who fell facedown. Campbell continued to shoot Beckley in the back multiple times.

G.J., who was out of the car, slowly backed away from Campbell. But Campbell aimed the gun at her and shot her, hitting her in the thigh. When G.J. started to run, Campbell chased her but eventually fled in the opposite direction. G.J. got help from residents of a nearby house and was taken to a hospital.

3

Beckley died of his gunshot wounds. An autopsy confirmed he had been shot multiple times, mostly in the back. There was no evidence of soot or stippling on his body to indicate he had been shot at close range.

Police found six expended bullet casings in the area near the passenger side of the car. At the hospital, G.J. told an officer that Campbell shot her and Beckley. G.J. later identified Campbell as the shooter from a photographic lineup.

Campbell was arrested in November 2018. While awaiting trial, in 2023, Campbell admitted to his mother in a recorded jail call that he "hit two people . . . one died and one lived." He said his "heart dropped" when he realized the one who survived would be a witness against him.

## II.

### *Verdict and Sentence*

A jury convicted Campbell of first degree murder (Pen. Code,[1] § 187, subd. (a); count 1) and attempted premeditated murder (§§ 664, subd. (a), 187, subd. (a); count 2), and found true firearm enhancements as to both counts (§ 12022.53, subds. (b)–(d)). In a bench trial, the court found true that Campbell suffered a 2017 felony conviction for assault with a firearm (§ 245, subd. (a)(2)) which qualified as a strike prior (§§ 1170.12, subd. (a), 667, subd. (b)–(i)) and serious felony prior (§ 667, subd. (a)).

The trial court sentenced Campbell to a total prison term of five years plus 114 years to life. On count 1, the court imposed 25 years to life, doubled to 50 years to life for the strike prior, plus 25 years to life for the section 12022.53, subdivision (d) firearm enhancement, plus five years for the serious

---

[1]     Undesignated statutory references are to the Penal Code.

4

felony prior. As to count 2, the court imposed seven years to life, doubled to 14 years to life for the strike prior, plus 25 years to life for the section 12022.53, subdivision (d) firearm enhancement. The court stayed the remaining section 12022.53, subdivisions (b) and (c) firearm enhancements as to counts 1 and 2, and the serious felony prior enhancement as to count 2.

DISCUSSION

I.

*Prosecutorial Error Claim Is Forfeited, and Campbell Fails to Establish Ineffective Assistance of Counsel*

Campbell claims his convictions must be reversed because the prosecutor committed prejudicial prosecutorial error by misstating the law on heat-of-passion voluntary manslaughter in closing argument. Recognizing he may have forfeited the claim, Campbell alternatively contends his trial counsel rendered ineffective assistance of counsel by failing to object and request an admonition. We conclude the claim is forfeited and Campbell does not establish ineffective assistance of counsel.

The trial court instructed the jury on the law regarding first and second degree murder (CALCRIM Nos. 500, 520, 521), the impact of provocation (CALCRIM No. 522), and voluntary manslaughter and attempted voluntary manslaughter based on heat of passion (CALCRIM Nos. 570 & 603). Relevant here, the voluntary manslaughter instruction provided in part as follows:

> "The defendant killed someone because of a sudden quarrel or in the heat of passion if:
>
> "1. The defendant was provoked;
>
> "2. As a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment;

5

"AND

"3. The provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment.

"[¶] . . . [¶]

"In order for heat of passion to reduce a murder to voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined it.  While no specific type of provocation is required, slight or remote provocation is not sufficient.  Sufficient provocation may occur over a short or long period of time.

"It is not enough that the defendant simply was provoked.  The defendant is not allowed to set up his own standard of conduct.  You must decide whether the defendant was provoked and whether the provocation was sufficient.  In deciding whether the provocation was sufficient, consider whether a person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than from judgment."

In closing argument, the prosecutor argued the evidence supported a conviction for first degree murder and attempted premeditated murder but anticipating a defense argument for the lesser charge of voluntary manslaughter, the prosecutor stated:

> "*So the question is, would someone hearing those words, 'Bitch,' cause a person of average disposition to act rashly without deliberation?  No.  It's common sense.  Does that pass the smell test?  If you're in a backyard barbecue and you hear a story of someone calling someone a bitch and then the other person just starts shooting them, would you think, Oh, they weren't acting rashly.  They were just so emotionally hyped that they were no longer thinking about right from wrong.  Does that make sense?  No.*  Slight or remote provocation is not sufficient.

6

"[¶] . . . [¶]

"*. . . But simply calling someone a bitch, does not [rise] to the level where you're not able to think rashly anymore. That's not what this is.*

"*The defendant cannot set up his own standard of conduct. It's not a gangster standard. It's what an average person with similar facts and circumstances would know and what they would do. A name-calling does not give you the right to pull out a gun and shoot. He cannot set up his own standard.* The law says that conduct by the victim calling someone a name would be sufficiently provocative to cause an ordinary person of average disposition to act without due deliberation.

"[¶] . . . [¶]

"Was he so enraged and emotionally charged that he did not know what was going on? He wasn't because someone that [is] so emotionally charged, they would be firing like crazy. . . . He was very particular about where he was going to aim and how many bullets he was going to use. He used just enough to shoot Mr. Beckley and then save some to shoot [G.J.]. He was not so emotionally charged that he didn't know what was going on.

"[¶] . . . [¶]

"*A reasonable person of average disposition, if they heard the word 'Bitch' would not kill under those circumstances. This is not voluntary manslaughter. You can't go around shooting people because someone just says words.*" (Italics added.)

Responding to the defense's argument that a gang member calling another gang member "a bitch" is a threat of an attack and Campbell was thus acting under provocation, the prosecutor argued in rebuttal:

7

"It's not enough the defendant's provoked by these words. An ordinary person of average disposition to act without due deliberation and reflection. That is not what we have here.

"[¶] . . . [¶]

"*This isn't the wild, wild west. You can't go around shooting people. A person of average disposition would not have shot Mr. Beckley under those circumstances.*" (Italics added.)

Campbell contends the italicized statements of the prosecutor were a misstatement of the law on heat of passion because "[t]he focus is not on the act, i.e., killing [Beckley], but on the defendant's state of mind." In his view, it was also a misstatement of the law that "the word 'bitch' cannot cause an emotion so intense that the person would just react." The prosecutor, he argues, committed prejudicial prosecutorial error that implicated his right to a fair trial.

But "[t]o preserve for appeal a claim of prosecutorial [error], the defense must make a timely objection at trial and request an admonition." (*People v. Price* (1991) 1 Cal.4th 324, 447; *People v. Johnsen* (2021) 10 Cal.5th 1116, 1164–1165 (*Johnsen*); *People v. Seumanu* (2015) 61 Cal.4th 1293, 1341.) "The reason for this rule, of course, is that the trial court should be given an opportunity to correct the abuse and thus, if possible, prevent by suitable instructions the harmful effect upon the minds of the jury." (*Seumanu*, at p. 1341 [cleaned up].) Campbell's trial counsel did not object or ask that the jury be admonished. "While failure to object would not forfeit his claim when doing so would have been futile or an admonition would be insufficient to cure the purported harm" (*Johnsen*, at p. 1164), Campbell makes no argument that either exception is present, and our review of the record does

8

not suggest that a timely objection would be futile or insufficient. He has therefore forfeited this claim on appeal.

Campbell alternatively contends his counsel rendered ineffective assistance by failing to object and request an admonition. To demonstrate ineffective assistance of counsel, a defendant "must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." (*Wiggins v. Smith* (2003) 539 U.S. 510, 521, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) "On direct appeal, a finding of deficient performance is warranted where '(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.' " (*Johnsen, supra*, 10 Cal.5th at p. 1165.) And " '[w]here counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.' " (*Ibid.*)

Campbell fails at the first step of *Strickland* because *he* has identified a conceivable reason for counsel's trial decision. He concedes his attorney did not object or ask for a jury admonishment because "to have done so likely would have done more harm, focusing the jury more on what the prosecutor said."[2] In his words, "[t]rying to avoid emphasis on the comments" is a

---

[2]    Here, the prosecutor correctly stated the law of provocation but strayed off course when he phrased the question as one of whether being called a "bitch" was sufficient provocation that would cause a reasonable person to shoot another. (See *People v. Beltran* (2013) 56 Cal.4th 935, 949 ["[P]rovocation is not evaluated by whether the average person would *act* in a certain way: to kill. Instead, the question is whether the average person would *react* in a certain way: with his reason and judgment obscured."].) But

9

sufficient tactical purpose for the omission. The concession is consistent with our Supreme Court's repeated recognition that " 'the decision . . . whether to object to comments made by the prosecutor in closing argument is a highly tactical one.' " (*Johnsen, supra*, 10 Cal.5th at p. 1165.) And as the People correctly observe, *Strickland* does not require defense counsel to have more than one tactical reason to be effective.

We thus conclude Campbell has not met his burden to rebut the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. (*Strickland, supra*, 466 U.S. at p. 689.) Because he fails at the first step of *Strickland*, we end the analysis here. (*Id.* at p. 697 ["there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one"].)

## II.

### *Sentencing Errors*

#### A. *Claims Are Forfeited*

Campbell asserts the trial court abused its discretion by not dismissing the prior strike allegation as to counts 1 and 2. He did not ask the court to dismiss his prior strike offense, so the claim is forfeited on appeal. (*People v. Carmony* (2004) 33 Cal.4th 367, 375–376 (*Carmony*) ["any failure on the part

---

given the trial court's instructions to the jury, including that they are to follow the law as explained by the court and disregard any attorney comments on the law that conflicts with the instructions (CALCRIM No. 200), defense counsel's decision to not object to the prosecutor's closing argument, in which three misstatements are interspersed with correct statements of the law drawn largely from the jury instructions, is a reasonable tactical choice.

of a defendant to invite the court to dismiss under section 1385 following *Romero* waives or forfeits his or her right to raise the issue on appeal"].)

Campbell argues the trial court abused its discretion, as to counts 1 and 2, by not striking the serious felony prior enhancements[3] and the section 12022.53 firearm enhancements under section 1385, subdivision (c)(2), subparagraphs (B), (H), and (C), and subdivision (c)(4). We agree with the People that Campbell has forfeited these claims, too, by failing to raise them in the trial court.

Campbell failed to ask that any of these enhancements be dismissed under section 1385, subdivision (c)(2) and (4). Campbell did not file a sentencing statement, nor a separate motion to strike or dismiss these enhancements. Defense counsel did not request the court to strike or dismiss enhancements at the sentencing hearing.

Defense counsel made a single isolated reference to section 1385, stating, "The amount of time in terms of the gun enhancements, I am asking, the Court has authority to do so, in terms of Penal Code Section 1385, I am asking the Court to *stay* those enhancements as to the decedent [*sic* – Campbell]." (Italics added.) But counsel did not expand upon this request nor clarify Campbell was asking for a dismissal as opposed to a stay, nor identify any of the subdivisions or subparagraphs of section 1385 justifying dismissal of the enhancements Campbell now raises on appeal. Instead, defense counsel focused her argument contesting the accuracy of the probation report's conclusion that there were "no mitigating factors." Counsel never argued such "mitigating factors," like Campbell's remorse or

---

[3]    It is unclear from Campbell's briefing whether he challenges the serious felony prior enhancements as to both counts or only one.

11

pretrial injuries, should be considered for purposes of dismissing enhancements under section 1385 subdivision (c)(2) or (4). We do not construe counsel's argument as a request to strike both the prior serious felony or all the firearm enhancements under section 1385, subdivision (c)(2), subparagraphs (B), (H), and (C), or subdivision (c)(4).

By failing to ask the trial court to either dismiss or strike these enhancements, Campbell has forfeited the issue on appeal. (*People v. Coleman* (2024) 98 Cal.App.5th 709, 724 [" 'Any failure on the part of a defendant to invite the court to dismiss under section 1385 . . . waives or forfeits his right to raise the issue on appeal.' " (cleaned up)].)

B. *No Ineffective Assistance of Counsel for Failing to Assert a Romero[4] Motion*

Campbell asserts as to the prior strike allegation only that his counsel was ineffective for failing to request the court to exercise its discretion to dismiss the allegation. Important here, "[c]ounsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile." (*Price, supra*, 1 Cal.4th 324 at p. 387.) Because Campbell cannot show on the present record that a *Romero* motion would have succeeded, he fails to show counsel's decision to not raise a *Romero* motion fell below an objective standard of reasonableness.

"A trial court has discretion to dismiss a prior conviction alleged under the Three Strikes law." (*People v. Dryden* (2021) 60 Cal.App.5th 1007, 1029.) In deciding whether to dismiss a prior serious or violent felony conviction under the Three Strikes law, a court must consider whether, "in light of the nature and circumstances of his present felonies and prior serious and/or

_____

4      *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

12

violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) This analysis often involves consideration of the remoteness and nature of the prior offenses. (*People v. Bishop* (1997) 56 Cal.App.4th 1245, 1250–1251.)

A trial court's refusal or failure to dismiss a prior conviction is reviewed for abuse of discretion. (*Carmony, supra*, 33 Cal.4th at p. 375.) When the court is silent and it does not dismiss a prior felony conviction, as in this case, we presume the court correctly applied the law. (*Id.* at p. 378.) In this context, an abuse of discretion exists in limited circumstances, including: when the trial court was not aware it had discretion to dismiss the strike, it considered impermissible factors in declining to dismiss the strike, or the sentencing norms established by the Three Strikes law result in arbitrary, capricious or patently absurd results under the specific facts of a particular case. (*Ibid.*) Error exists only in the extraordinary instance that reasonable minds could not differ in the conclusion that the relevant factors manifestly support dismissing the strike. (*Ibid.*)

This is not an extraordinary case. Campbell has a criminal history dating back to 2004. He has multiple convictions for felon in possession of a firearm, in 2008 and 2011. The prior strike offense—an assault with a firearm (§ 245, subd. (a)(2))—was also violent and close in time to the conviction offense. They were 19 months apart. He violated his parole twice, in 2008 and 2009, and committed the murder and attempted murder while on parole. This history reflects not only an inability to conform his conduct to

the law, but also a trend of escalating violent conduct.  Campbell's record of recidivism confirms he falls within the spirit of the Three Strikes law.

Campbell disagrees he is "the type of person the Three Strikes law was meant to remove from society for life."  He references "mitigating circumstances," including his remorse for the victims and injuries he suffered while in pretrial custody.  A trial court could reasonably reject these arguments as they are outweighed by the violent nature of Campbell's convictions and the fact he has led a continuous life of crime since 2004, demonstrating he is incapable of conforming to societal norms.  Considering the evidence and circumstances of this case, we have no reason to believe a court would conclude Campbell falls outside the spirit of the Three Strikes law.  Thus, an invitation to dismiss the strike would have been futile and defense counsel's decision not to make such a request was not deficient.

C.   *Unauthorized Stay of Serious Felony Prior as to Count 2 and Various Firearm Enhancements*

As noted, the trial court imposed and stayed both the remaining section 12022.53, subdivisions (b) and (c) firearm enhancements as to counts 1 and 2, and the serious felony prior enhancement as to count 2.  The People concede this was an unauthorized sentence and we agree.  Having examined the record, we agree the trial court did not intend to punish Campbell for these additional enhancements.  Because a trial court has no authority to stay an enhancement based on its discretion, the court imposed a legally unauthorized sentence.  (*People v. Bay* (2019) 40 Cal.App.5th 126, 139 [" 'The trial court has no authority to stay an enhancement, rather than strike it— not, at least, when the only basis for doing either is its own discretionary sense of justice.' "].)  We exercise our authority under section 1260 to modify the judgment by striking this unauthorized sentence, as the parties request.

14

## DISPOSITION

The judgment is modified by striking the allegation under section 667, subdivision (a), as to count 2; and the allegations under section 12022.53, subdivisions (b) and (c), as to counts 1 and 2. We affirm the judgment as modified in all other respects. We direct the trial court to prepare a corrected abstract of judgment and forward a certified copy to the Department of Corrections.

DO, J.

WE CONCUR:

DATO, Acting P. J.

CASTILLO, J.

15